WO

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| United States of America,<br><br>Plaintiff,<br><br>v.<br><br>Dennis J Sprenger, et al.,<br><br>Defendants. | No. CV-20-00026-PHX-MTL<br><br>**ORDER** |

Plaintiff the United States of America (the "United States") moves for default judgment against Defendants Dennis J. Sprenger and Bank of Arizona pursuant to Fed. R. Civ. P. 55(b)(2). (Doc. 23.) All Defendants have been timely served. (Docs. 7, 9, 10, 28.) Sprenger and Bank of Arizona have not appeared or filed any responses. For the reasons discussed below, the Motion for Default Judgment is granted. The United States is entitled to enforce federal tax liens relating to Sprenger's outstanding federal income tax liabilities in accordance with this Order.

**I.   BACKGROUND**

The United States' Complaint alleges Sprenger has outstanding federal income tax liabilities for the 1998, 2001, 2002, 2003, 2004, and 2005 tax years. (Doc. 1 ¶ 12.) A delegate of the Secretary of the Treasury made assessments against and demanded payment of the unpaid taxes from Sprenger. (*Id.* ¶¶ 12–13.) Despite notice and demand for payment, Sprenger failed to pay the tax assessments. (*Id.* ¶ 14.) On September 26, 2012, the United States filed a notice of federal tax lien with the Maricopa County Recorder's Office with

respect to Sprenger's unpaid federal income taxes. (*Id.* ¶ 16.)

On January 30, 2015, the United States filed a civil action seeking a monetary judgment against Sprenger for his unpaid federal income tax liabilities.[1] (*Id.* ¶ 22.) Although Sprenger was properly served, he failed to answer or otherwise respond. (*Id.* ¶ 23.) On July 2, 2015, a default judgment order was entered against Sprenger in the amount of $668,988.09, plus interest thereon accruing from April 1, 2015 until the judgment is paid in full. (Doc. 1 ¶ 24.) The United States recorded an abstract of judgment with the Maricopa County Recorder's Office on August 11, 2015. (*Id.* ¶ 25.) The balance due as of December 17, 2019, is $824,999.63. (*Id.* ¶ 26.)

Sprenger acquired certain real property located at 5108 East Juniper Avenue, Scottsdale, Arizona 85254 (the "Subject Property") on November 22, 1996, via a special warranty deed recorded with the Maricopa County Recorder's Office. (*Id.* ¶ 10.) According to the deed, Sprenger acquired the Subject Property as his sole and separate property. (*Id.*) Sprenger's wife recorded a disclaimer deed stating she had no right, title, interest, claim, or lien of any kind or nature whatsoever in, to, or against the Subject Property. (*Id.* ¶ 11.) The same day, Bank of Arizona recorded a deed of trust claiming a mortgage on the Subject Property (the "1996 Mortgage"). (Doc. 23–2.) Bank of Arizona recorded an assignment deed of trust assigning the 1996 Mortgage to Countrywide Home Loans, Inc. ("Countrywide"). (Doc. 23–3.)

Bank of Arizona recorded a second deed of trust claiming a mortgage on the Subject Property on May 5, 1997 (the "1997 Mortgage"). (Doc. 23–4.) On September 16, 2013, Countrywide recorded an assignment deed of trust assigning the 1996 Mortgage to Green Tree Servicing, LLC ("Green Tree").[2] (Doc. 23–5.) On November 16, 2016, a modification agreement was recorded naming DiTech Financial LLC f/k/a Green Tree ("DiTech") as the lender and referencing the original 1996 Mortgage. (Doc. 23–6.) DiTech recorded a corporate assignment of deed of trust, assigning the 1996 Mortgage to New Residential Mortgage LLC ("New residential") on March 2, 2020. (Doc. 23–7.)

---

[1] *See United States v. Dennis J. Sprenger*, Case No. CV–15–00159–PHX–GMS.
[2] The 2013 assignment deed of trust did not mention the 1997 Mortgage. (Doc. 23–5.)

- 2 -

The United Stated filed this action on January 6, 2020, seeking to enforce federal tax and judgment liens against the Subject Property via judicial sale. (Doc. 1 ¶ 1.) In addition to Sprenger, the Complaint named the State of Arizona *ex rel* Department of Economic Security (the "State of Arizona"), Bank of Arizona, and DiTech as Defendants who may claim an interest in the Subject Property. (*Id.* ¶¶ 5–8.) Despite being properly served, Sprenger, Bank of Arizona, and DiTech failed to answer or otherwise respond to the United States' Complaint. (Doc. 23 at 3.) The Clerk of Court entered default against Sprenger, Bank of Arizona, and DiTech. (Docs. 16; 18.) In a previous Order issued on February 18, 2021, the Court granted the United States' motion to substitute New Residential for DiTech. (Doc. 28.) Pursuant to that Order, the entry of default entered against DiTech was set aside and does not apply to New Residential. (*Id.* at 2.) The Order also denied the United States' Motion for Default Judgment as moot as to DiTech. (*Id.* at 3.) New Residential was excused from further participating in this proceeding because it did not oppose the United States' request for an order of judicial sale. (*Id.* at 3–4.) The State of Arizona filed a disclaimer of interest regarding the Subject Property on April 7, 2020. (Doc. 11.) Accordingly, the United States' Motion for Default Judgment remains only as it relates to Sprenger and Bank of Arizona.

## II.   LEGAL STANDARD

Once default has been entered, the district court has discretion to grant default judgment. *See* Fed. R. Civ. P. 55(b)(2); *Aldabe v. Aldabe*, 616 F.2d 1089, 1092 (9th Cir. 1980). The court may consider several factors, including (1) the possibility of prejudice to the plaintiff; (2) the merits of the claims; (3) the sufficiency of the complaint; (4) the amount of money at stake; (5) the possibility of a dispute concerning material facts; (6) whether default was due to excusable neglect; and (7) the strong policy favoring a decision on the merits. *See Eitel v. McCool*, 782 F.2d 1470, 1471–72 (9th Cir. 1986). In applying the *Eitel* factors, the factual allegations of a complaint, apart from damages, are taken as true. *TeleVideo Sys., Inc. v. Heidenthal*, 826 F.2d 915, 917–18 (9th Cir. 1987). The moving party has the burden to prove all damages. *Philip Morris USA, Inc. v.*

*Castworld Prod., Inc.*, 219 F.R.D. 494, 498 (C.D. Cal. 2003).

## III. DISCUSSION

Before assessing the merits of United States' Motion for Default Judgment, the Court must confirm that it has subject-matter jurisdiction over the case and personal jurisdiction over the Defendants. *See In re Tuli*, 172 F.3d 707, 712 (9th Cir. 1999) ("When entry of judgment is sought against a party who has failed to plead or otherwise defend, a district court has an affirmative duty to look into its jurisdiction over both the subject matter and the parties."). The Court must also assess whether the Defendants were properly served with notice of the action. *See S.E.C. v. Internet*, 509 F.3d 1161, 1165 (9th Cir. 2007).

### A. Subject-Matter Jurisdiction

Rule 8(a)(1) of the Federal Rules of Civil Procedure requires a plaintiff to include "a short and plain statement of the grounds for the court's jurisdiction." Fed. R. Civ. P. 8(a)(1). The United States asserts that the Court has subject-matter jurisdiction over this action pursuant to 26 U.S.C. §§ 7402(a), 7403 and 28 U.S.C. §§ 1340, 1345. (Doc. 1 ¶ 3.) District courts have original jurisdiction of "all civil actions, suits or proceedings commenced by the United States," 28 U.S.C. § 1345, and "any civil action arising under any Act of Congress providing for internal revenue." 28 U.S.C. § 1340. Under the Internal Revenue Code, district courts have jurisdiction to "render such judgments and decrees as may be necessary or appropriate for the enforcement of the internal revenue laws." 26 U.S.C. § 7402(a). This includes the authority to adjudicate actions to enforce the United States' tax liens or to subject any property to the payment of such tax liability. 26 U.S.C. § 7403. This is a civil action commenced by the United States to enforce federal tax and judgment liens against the Subject Property. (Doc. 1 ¶ 1.) Accordingly, the Court has subject-matter jurisdiction over this action.

### B. Personal Jurisdiction

"Federal courts ordinarily follow state law in determining the bounds of their jurisdiction over persons." *Daimler AG v. Bauman*, 571 U.S. 117, 125 (2014). Arizona's long-arm statute conforms with the requirements of federal due process. Ariz.

R. Civ. P. 4.2(a). The analysis of personal jurisdiction under Arizona law and federal due process is, therefore, the same. *See Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 800–01 (9th Cir. 2004).

For the exercise of personal jurisdiction to comport with federal due process, the defendant must have certain "minimum contacts" with the forum state such that the exercise of jurisdiction "does not offend traditional notions of fair play and substantial justice." *Id.* at 801 (quoting *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945)). Personal jurisdiction may be general (based on a forum connection unrelated to the underlying suit) or specific (based on an affiliation between the forum and the underlying controversy). *See, e.g., Picot v. Weston*, 780 F.3d 1206, 1211 (9th Cir. 2015). General jurisdiction is appropriate where the defendant is "essentially at home" in the state. *Ford Motor Co. v. Montana Eighth Jud. Dist. Ct.*, 141 S. Ct. 1017, 1024 (2021). "For an individual, the paradigm forum for the exercise of general jurisdiction is the individual's domicile; for a corporation, it is an equivalent place, one in which the corporation is fairly regarded as at home." *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 924 (2011). The United States' Complaint does not provide enough information to conclude this Court has general personal jurisdiction over Sprenger or Bank of Arizona.[3] The Court must, therefore, determine whether it has specific personal jurisdiction.

The Ninth Circuit uses a three-part test to analyze specific jurisdiction:

(1) The non-resident defendant must purposefully direct his activities or consummate some transaction with the forum or resident thereof; or perform some act by which he purposefully avails himself of the privilege of conducting activities in the forum, thereby invoking the benefits and protections of its laws;
(2) the claim must be one which arises out of or relates to the defendant's forum-related activities; and

---

[3] Although the United States alleges Sprenger resides in Arizona (Doc. 1 ¶ 5), residence and domicile are not the same for jurisdictional purposes. *See Kanter v. Warner-Lambert Co.*, 265 F.3d 853, 857 (9th Cir. 2001); *see also Gaudin v. Remis*, 379 F.3d 631, 636 (9th Cir. 2004) (defining domicile as the place where the party is physically present and intends to remain).

- 5 -

(3) the exercise of jurisdiction must comport with fair play and substantial justice, i.e., it must be reasonable.

*Picot*, 780 F.3d at 1211 (citing *Schwarzenegger*, 374 F.3d at 802) (internal citations omitted). The plaintiff has the burden of proving the first two prongs. *CollegeSource, Inc. v. AcademyOne, Inc.*, 653 F.3d 1066, 1076 (9th Cir. 2011). If the plaintiff does so, the burden shifts to the defendant to set forth a "compelling case" that the exercise of jurisdiction would be unreasonable. *Id.*

The Court finds Sprenger and Bank of Arizona purposefully availed themselves to the laws of this State. "Evidence of availment is typically action taking place in the forum that invokes the benefits and protections of the laws in the forum." *Pebble Beach Co. v. Caddy*, 453 F.3d 1151, 1155 (9th Cir. 2006). Sprenger resides in Arizona and owns the Subject Property, which is located in Arizona. (Doc. 1 ¶¶ 5, 9–10.) Bank of Arizona recorded a deed of trust with the Maricopa County Recorder's Office, whereby it attained rights and interests in the Subject Property. (Doc. 23–4.) Furthermore, because the United States seeks to foreclose on the Subject Property, it's claim relates to the Sprenger's and Bank of Arizona's forum-related activities. Accordingly, the Court finds it has specific personal jurisdiction over Sprenger and Bank of Arizona.[4]

**C.    Service of Process**

Rule 4 of the Federal Rules of Civil Procedure provides that an individual may be served by delivering a copy of the summons and complaint to the individual personally. Fed. R. Civ. P. 4(e)(2)(A). The United States filed a proof of service stating that a process server personally served Sprenger with the summons and Complaint at the Subject Property on March 20, 2020. (Doc. 7.)

Rule 4 also provides that a corporation, partnership, or other unincorporated association in a judicial district of the United States may be served in accordance with the laws of the state where the action was filed or where service is made. Fed. R. Civ. P.

---

[4] New Residential consented to the Courts jurisdiction with respect to this action. (Docs. 27 at 4; 28 at 2.)

4(h)(1)(A). Under Arizona law, "[i]f a domestic corporation does not have an officer or an agent within Arizona on whom process can be served, the corporation may be served by depositing two copies of the summons and the pleading being served with the Arizona Corporation Commission." Ariz. R. Civ. P. 4.1(j)(1); *see also* A.R.S. § 10–504(B) ("If a corporation fails to appoint or maintain a statutory agent at the address shown on the records of the commission, the commission is an agent of the corporation on whom process, notice or demand may be served."). "Following this procedure constitutes personal service on that corporation." Ariz. R. Civ. P. 4.1(j)(1). Here, the United States filed a proof of service stating that Bank of Arizona failed to maintain a statutory agent at the address shown on the Arizona Corporation Commission's records. (Doc. 10.) The proof of service further states the process server effected service on the Arizona Corporation Commission in accordance with A.R.S. § 10–504(B) on March 25, 2020. (*Id.*) The Court, therefore, finds effective service of process upon Sprenger and Bank of Arizona.

### D.     Default Judgment

Having found that the Court has subject-matter jurisdiction over the case, personal jurisdiction over the parties, and that Sprenger and Bank of Arizona were properly served, the Court now turns to the merits of the United States' Motion for Default Judgment.

#### 1.     The first, fifth, sixth, and seventh *Eitel* factors

In a case such as this, where the Defendants have not participated in the litigation, the "first, fifth, sixth, and seventh [*Eitel*] factors are easily addressed." *Zekelman Indus. Inc. v. Marker*, No. CV–19–02109–PHX–DWL, 2020 WL 1495210, at *3 (D. Ariz. Mar. 27, 2020). The first factor weighs in favor of default judgment because denying the United States' Motion will leave it "without other recourse for recovery." *PepsiCo, Inc. v. Cal. Sec. Cans*, 238 F. Supp. 2d 1172, 1177 (C.D. Cal. 2002). The fifth factor also weighs in favor of default judgment. Because "all well-pleaded facts in the complaint are taken as true, . . . no genuine dispute of material facts would preclude granting" the motion for default judgment. *Id.* Similarly, the sixth factor weighs in favor of default judgment. Because Sprenger and Bank of Arizona were properly served, it is unlikely that their failure

to answer was the result of excusable neglect. *See Twentieth Century Fox Film Corp. v. Streeter*, 438 F. Supp. 2d 1065, 1072 (D. Ariz. 2006). And while the seventh *Eitel* factor generally weighs against default judgement, the existence of Rule 55(b) indicates that this preference, standing alone, is not dispositive. *PepsiCo*, 238 F. Supp. 2d at 1177. The Court, therefore, finds that this factor is not sufficient to preclude the entry of default judgment.

### 2.     The second and third *Eitel* factors

The second and third *Eitel* factors—the merits of the claim and the sufficiency of the complaint—are often analyzed together and require courts to consider whether a plaintiff has stated a claim on which it may recover. *Id.* at 1175. The only claim in the United States' Complaint is to enforce federal tax liens and a judgment lien for federal tax liabilities against the Subject Property via judicial sale pursuant to 26 U.S.C. § 7403(a). (Doc. 1 ¶ 1.)

A lien in favor of the United States arises upon all property of a taxpayer who neglects or refuses to pay its tax liabilities after receiving a demand for payment. 26 U.S.C. § 6321. The lien arises at the time an assessment is made and continues until the liability for the amount assessed, or a judgment against the taxpayer arising out of such liability, is satisfied or becomes unenforceable by lapse of time. 26 U.S.C. § 6322. Here, the United States alleges Sprenger failed to pay federal income tax liabilities for the 1998, 2001, 2002, 2003, 2004, and 2005 tax years. (Doc. 1 ¶¶ 12, 14.) A delegate of the Secretary of the Treasury made assessments against Sprenger for these tax liabilities and demanded payment for such assessments. (*Id.* ¶¶ 12–13.) Sprenger failed to pay the taxes assessed against him. (*Id.* ¶ 14.) This gave rise to liens in favor of the United States over all of Sprenger's property as of the date of the assessments. *See* 26 U.S.C. §§ 6321, 6322. On September 23, 2012, the United States filed a notice of federal tax lien with the Maricopa County Recorder's Office with respect to Sprenger's unpaid taxes. (Doc. ¶ 16.)

The United States generally has ten years to collect unpaid taxes after the assessment of such tax is made. 26 U.S.C. § 6502(a)(1). If the tax liens are reduced to judgment in an action commenced within this time period, however, the liens are enforceable at any time.

*United States v. Layman*, 149 F. App'x 675, 676 (9th Cir. 2005) (citing *United States v. Overman*, 424 F.2d 1142, 1147 (9th Cir. 1970)). The United States made the earliest of the tax assessments against Sprenger on February 28, 2005. (Doc. 1 ¶ 12.) The United States then commenced a civil action to reduce the federal tax assessments to judgment on January 30, 2015, within the ten-year limitations period. (*Id.* ¶ 22.) Thereafter, on July 2, 2015, a default judgment order was entered against Sprenger in the amount of his unpaid tax liabilities. (*Id.* ¶ 24.) The United States recorded an abstract of judgment with the Maricopa County Recorder's Office on August 11, 2015. (*Id.* ¶ 25.) The recorded abstract of judgment created a judgment lien in favor of the United States in the amount of the judgment, including costs and interests thereon, against all real property of Sprenger in Maricopa County, including the Subject Property. *See* 28 U.S.C. § 3201(a); 26 U.S.C. § 6323(f)(1)(A)(i); A.R.S. §§ 33-414(A).

The United States may file a civil action to enforce tax liens or subject any property of the delinquent taxpayer to the payment of such tax liability. 26 U.S.C. § 7403(a). The United States must join "[a]ll persons having liens upon or claiming any interest in the property involved in such action." 26 U.S.C. § 7403(b). The Court may order a sale of the property and distribution of the proceeds of such sale according to the interests of the parties. 26 U.S.C. § 7403(c). The United States alleges that despite notice and demand for payment, Sprenger has failed to pay his outstanding federal income tax liabilities. (Doc. 1 ¶ 33.) In addition to Sprenger, the Complaint named the State of Arizona, Bank of Arizona, and DiTech as defendants who may claim an interest in the Subject Property. (*Id.* ¶¶ 5–8.) New Residential was later substituted for DiTech as a proper party in this action pursuant to 26 U.S.C. § 7403(b). (Docs. 27; 28.) The United States did not join Sprenger's wife because she disclaimed any interest to the Subject Property. (Doc. 1 ¶ 11.) The Court, therefore, finds the United States adequately alleged that it is entitled to enforce its tax liens against the Subject Property via a judicial sale pursuant to 26 U.S.C. § 7403(c).

  **3.**  **The fourth *Eitel* factor**

Under the fourth *Eitel* factor, courts consider the amount of money at stake in

relation to the seriousness of the defendants' conduct. *See PepsiCo, Inc.*, 238 F. Supp. 2d at 1176. If the sum of money at stake is completely disproportionate or inappropriate, default judgment is disfavored. *See Twentieth Century Fox Film Corp.*, 438 F. Supp. 2d at 1071. In contrast to the other allegations in a complaint, allegations pertaining to damages are not taken as true when considering a motion for default judgment. *See Fair Hous. of Marin v. Combs*, 285 F.3d 899, 906 (9th Cir. 2002).

The United States does not request any monetary judgment against any of the parties in this action. (Doc. 1 ¶ 35.) The United Stated previously obtained default judgment against Sprenger in the amount of $668,988.09, plus interest thereon accruing from April 1, 2015 as provided by 26 U.S.C. §§ 6601, 6621–22 until the judgment is paid in full. (*Id.* ¶ 24.) The United States alleged the balance due as of December 17, 2019 is $824,999.63. (*Id.* ¶ 26.)[5] In this action, the United States seeks an adjudication that it is entitled to enforce its liens against the Subject Property via judicial sale. (*Id.* ¶ 35; Doc. 23 at 8.) Based on the prior monetary judgment against Sprenger and the relief requested by the United States in this action, the Court finds this factor does not weigh against default judgment.

### 4. Conclusion

After reviewing the *Eitel* factors, the Court finds the United States is entitled to default judgment against Sprenger and Bank of Arizona on its claim to enforce its federal tax liens against the Subject Property via judicial sale pursuant to 26 U.S.C. § 7403(a). (Doc. 1 ¶ 1.)

### E. Postponement of Judicial Sale

The Court now turns to the United States' request to delay the filing of a motion for order of sale because of the COVID-19 Pandemic. The United States asserts that the Subject Property is currently Sprenger's personal residence. (Doc. 23 at 10.) It also points to the challenges with complying with national guidelines and local public health

---

[5] A tax lien in favor of the United States shall be for the amount of any unpaid tax, "including any interest, additional amount, addition to tax, or reasonable penalty, together with any costs that may accrue in addition thereto." 26 U.S.C. § 6321. The added amount for the failure to file a tax return or pay a tax is calculated pursuant to 26 U.S.C. § 6651. The interest on a tax liability is determined pursuant to 26 U.S.C. §§ 6601, 6621–22.

regulations related to COVID-19. (*Id.*) The United States, thus, proposes delaying the filing of a motion for order of sale until it determines that it is appropriate to move forward with a forced sale. (*Id.*) Under this proposition, the Court would retain jurisdiction over this action and require the United States to file periodic status reports every six months regarding the feasibility of a sale of the Subject Property. (*Id.*)

The Court has broad discretion in setting the terms of a sale of property pursuant to 26 U.S.C. § 7403(c). *See Overman*, 424 F.2d at 1146. Over the past year, district courts have afforded the United States flexibility as to the time period in which to sell property subject to federal tax liens in light of the limitations imposed by COVID-19. *See United States v. W. Pro. Enterprises, Inc.*, No. 4:19–CV–001906–AGF, 2021 WL 916332, at *8 (E.D. Mo. Mar. 10, 2021) (granting the United States 90 days to submit either a proposed order of sale or a status report explaining why the property should not be sold immediately); *United States v. Knowles*, No. 19–CV–394 (NEB/HB), 2020 WL 7490032, at *6 (D. Minn. Dec. 21, 2020) (granting the United States 180 days in which to file a motion for order of sale); *United States v. Lamberd*, No. 19–2241–JWL, 2020 WL 2523381, at *4 (D. Kan. May 18, 2020) (granting the United States 90 days to file a motion seeking an order of sale or a status report explaining why additional time to seek such sale is warranted). The Court recognizes the limitations created by COVID-19. The Court finds, however, that retaining jurisdiction over this matter for an indefinite period of time is unreasonable. Accordingly, the Court will grant the United States 90 days in which to file either a motion for order of sale of the Subject Property or a status report explaining in detail why additional time to conduct such a sale is necessary.

**IV. CONCLUSION**

Accordingly,

**IT IS ORDERED** that the United States' Motion for Default Judgment against Sprenger and Bank of Arizona (Doc. 23) is **granted**.

**IT IS FURTHER ORDERED** that the United States is entitled to enforce its federal tax liens relating to Sprenger's outstanding 1998, 2001, 2002, 2003, 2004, and 2005

federal income tax liabilities against the Subject Property via judicial sale pursuant to 26 U.S.C. § 7403.

**IT IS FURTHER ORDERED** that the Subject Property will be sold free and clear of all rights, titles, liens, claims, and interest of the parties hereto.

**IT IS FURTHER ORDERED** that Defendant Bank of Arizona shall not be entitled to any distribution of the proceeds of the sale of the Subject Property.

**IT IS FURTHER ORDERED** that Defendant the State of Arizona shall not be entitled to any distribution of the proceeds of the sale of the Subject Property by virtue of its disclaimer of interest (Doc. 11).

**IT IS FURTHER ORDERED** that the priority of liens and distribution of proceeds of the sale of the Subject Property between the United States and Defendant New Residential are as set forth in this Courts Order granting the United States' and New Residential's Stipulation Regarding Substitution and Lien Priority (Doc. 28). Specifically, the sales proceeds will be distributed first to the United States to the extent of its costs and expenses of the sale. Second, to Maricopa County for the payment of any outstanding Maricopa County real property taxes. Third, to New Residential to be applied toward the outstanding balance of the 1996 Mortgage as modified in the 2016 modification agreement and subsequently assigned to New Residential in the 2020 assignment. Then to the United States to be applied to Sprenger's outstanding federal income tax liabilities for the 1998, 2001, 2002, 2003, 2004, and 2005 tax years. Finally, the remaining proceeds, if any, shall be distributed to Sprenger.

**IT IS FINALLY ORDERED** that the United States has 90 days in which to file either a motion for order of sale of the Subject Property or a status report explaining in detail why additional time to conduct such a sale is necessary.

Dated this 3rd day of August, 2021.

*Michael T. Liburdi*
Michael T. Liburdi
United States District Judge